[Civ. No. 8166.  Second Appellate District, Division One.—February 1, 1935.]

ROY S. LANTERMAN, Appellant, v. BOARD OF MEDICAL EXAMINERS, Respondent.

Oliver O. Clark and Ray L. Morrow for Appellant.

Otto J. Emme and Bayard R. Rountree for Respondent.

THE COURT.—From the record herein it appears that, following and in pursuance of a hearing had before the board of medical examiners of the state of California, an order was made by which the license theretofore issued to Dr. Roy S. Lanterman to practice medicine in this state was revoked.  In due course, on the application of said Lanterman, a writ of *certiorari* was issued out of the superior court by which the jurisdiction of said board to make its said

order in the premises was proposed to be tested. Following a return to the writ and a hearing had thereon in said court, in effect it was adjudged that the writ be and it was discharged. It is from such judgment that the instant appeal is taken.

The only question that is presented to this court relates to whether, on the hearing before the respondent board of the charges that were preferred against Dr. Lanterman, the evidence adduced was sufficient to support an implied finding that he had performed an illegal operation on the person of a young woman by which an abortion was produced. In that regard, it appears that the only evidence that was introduced with reference to the charge consisted in the testimony that was given by the young woman. In substance, the material part of her testimony was that "prior to the early part of December" she had had sexual intercourse with a male human being; that she could not remember the date, or even the month, in which such intercourse had occurred; that she menstruated in the month of October, but not in the month of November; that "she wasn't feeling so well", and that she had consulted a woman physician who had advised her that she was pregnant; that she "didn't have much energy", but that she experienced none other of the "symptoms" which ordinarily attend the condition of pregnancy; that "in the early part of December" she visited the office of Dr. Lanterman and told him she was pregnant; that he made no physical examination of her, but after agreeing with him upon his fee of $75, he told her to return on a later date to have "an operation and treatment . . . for pregnancy"; that nothing was said about an operation to produce an abortion, but that "that was understood"; that a few days afterward, in the forenoon of a certain day, she returned to a room in Dr. Lanterman's office, and after removing her outer clothing, and while she was then clad in a "slip-on" only, she donned a kimono and went into another room, where she was seated on a table; that Dr. Lanterman and his nurse were then and there present; that no physical examination was made of her, but that after she lay down she was given an anesthetic; that thereafter she knew nothing more until early in the afternoon of that day, when she recovered consciousness and went to her home; that thereafter she did not suffer anything ·more

than slight pain throughout her abdomen, although she "flowed a little" for about three days; and that within a week after her second visit to the office of Dr. Lanterman, she visited the office of another physician.

It is apparent that if the evidence failed to establish either the fact that at the time when the "treatment" occurred the young woman was pregnant, or that an operation was performed by Dr. Lanterman, or attempted to be performed by him, for the purpose of producing an illegal and criminal abortion upon the person of the young woman, —the order made by the respondent board by which the license of Dr. Lanterman to practice medicine in this state was revoked, was rendered in excess of the jurisdiction of said board, and consequently was void.

The effect of the evidence adduced at the hearing before said board is determinative of the question herein presented. It is obvious that the testimony given by the young woman that "prior to the early part of December" she had had sexual intercourse, etc., is extremely indefinite and uncertain; that is to say, it cannot be either accurately or at all determined therefrom whether such intercourse occurred within a week, a month, a year, or at any other specified time "prior to the early part of December". It is manifest that if such intercourse occurred ten months or more prior to such time, it would be more than improbable that because of the alleged intercourse regarding which she testified any pregnancy could result. The fact that the young woman had menstruated in the month of October, but not in the month of November, would not be conclusive as to the fact of pregnancy. ██ The testimony of the young woman (given over the objection of Dr. Lanterman) that some physician had advised her that she was pregnant was hearsay, both as to the fact that the person who gave the advice was a physician, and more particularly regarding the alleged pregnant condition. Being thus inadmissible, the respondent board had no right to receive such facts in evidence, nor to base its conclusion in any part thereon. What the young woman told Dr. Lanterman, or what he assumed regarding her condition, could add nothing to the actual fact. Nor could the amount of the "fee" that was paid to Dr. Lanterman for a "treatment" tend to establish the condition of pregnancy. The statement by the young

woman that the operation "was understood" was but a conclusion on her part that was entirely negatived by her accompanying statement that "nothing was said about an operation". On the other hand, the testimony, in substance, that, although she was given an anesthetic, her undercloth-ing was not removed; that she suffered very little pain; that after the "treatment" she flowed very little and for only "about three days", would tend to indicate that no abor-tion had occurred. It is significant that at no time was the nurse in Dr. Lanterman's office, nor the woman physician who purportedly had advised the young woman with respect to her examination, called as a witness; nor did the physi-cian whom the young woman consulted after her visit to Dr. Lanterman's office give any testimony.

It is apparent that the prerequisite condition of pregnancy in the young woman was not established by the evidence; nor was the fact established as to whether any abortion was performed, or attempted to be performed, by Dr. Lanter-man; or whether (in the language of the "complaint") he aided or abetted in any abortion upon the person of the young woman; or whether he ever agreed or offered to pro-cure any such abortion. In that regard, the most that ap-pears is that the young woman was given an anesthetic, and that thereafter for "about three days" she suffered some slight pain and flowed "a little".

The judgment is reversed and the cause remanded, with the direction that a judgment be entered annulling the said order.